IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RANDALL STEVEN SPEARS,

    Plaintiff,

v.                                                 CASE NO. 1:22-cv-35-AW-GRJ

LT. DRIGGERS
and SERGEANT HILL,

    Defendants.
_____/

## **REPORT AND RECOMMENDATION**

Pending before the Court is Defendants' Motion to Dismiss, ECF No. 16,[1] this "excessive force" and "medical deliberate indifference" case brought by *pro se* in forma pauperis prisoner Plaintiff, Randall Spears ("Spears"), pursuant to 42 U.S.C. § 1983, ECF No. 1. In their motion, Defendants argue that dismissal is warranted because Spears failed follow the proper procedures for exhausting his administrative remedies prior to filing this lawsuit. Spears responded in opposition that he did not know he was required to appeal his grievances to the Colonel, and he asks that the Court not hold him accountable for his "lack of knowledge" by dismissing his case.

---

[1] The Motion was initially filed by Defendant Lt. Driggers and later joined by Defendant Sergeant Hill with leave of Court. *See* ECF Nos. 21, 22.

ECF No. 25.  After due consideration, the Court concludes that this case must be dismissed because Spears failed to exhaust his administrative remedies in compliance with the Florida Department of Corrections' grievance rules, depriving the institution of an opportunity to redress Spears' complaints before bringing the claims in federal court.[2]  Accordingly Defendants' Motion to Dismiss should be granted on exhaustion grounds and this case should be dismissed without prejudice.

## I. PLAINTIFF'S ALLEGATIONS

Spears' allegations, taken as true, are as follows:  On December 1, 2021, Spears notified prison officials in writing that he feared for his life from other inmates.  ECF No. 1 at 5.[3]  Two weeks later, Spears "declared a psychological emergency" in the presence of Defendant prison officers Lt. Driggers ("Driggers") and Sgt. Hill ("Hill").  Spears was subsequently handcuffed and escorted to a holding cell.  Shortly afterwards, Lt. Driggers

---

[2] Defendants also contend that this case must be dismissed because Spears did not suffer any physical injury associated with the alleged constitutional deprivations, *see* Prison Litigation Reform Act ("PLRA") and because Defendants are entitled to immunity from monetary damages in their official capacities.  ECF No. 16 at 12-17.  Because Spears is suing for punitive damages, he does not need to allege any physical injury. *Hoover v. Marks*, 993 F.3d 1353 (11th Cir. 2021). Defendants are, however, correct that the Eleventh Amendment bars a Section 1983 claim for monetary damages against officials acting in their official capacities.  *See Cross v. State of Ala., Dept. of Mental Health & Mental Retardation*, 49 F.3d 1490 (11th Cir. 1995).

[3] All allegations in this paragraph can be found at ECF No. 1 at 5.

approached the holding cell and asked Spears, "What's going on?" Spears complained that he had not received mental health assistance that he requested on December 1, 2021. Driggers responded, "That's bullshit", warning Spears that if he kept on talking, he would "gas" Spears' "black ass". Spears retorted that Driggers could not spray him with chemical agents because he was already restrained. Further, Spears complained that the nurse still had not arrived to provide the mental health treatment he requested. The nurse then arrived at the holding cell, and Driggers sprayed Spears with a chemical agent. When Spears asked Driggers why he sprayed him, Driggers replied that Spears had "slipped his cuffs" and threatened to "jump" him, which was a lie.

Driggers informed Spears that, essentially, no one would believe him, as it was Driggers' word against Spears' about what actually transpired regarding the spraying of the chemical agent. ECF No. 1 at 6.[4] Spears says that he was placed back in his cell, was "never placed on suicide watch", and never received any disciplinary reports related to the spraying incident. Finally, Spears supplied copies of the written grievances he filed with the Assistant Warden, complaining about being denied mental health treatment,

---

[4] All allegations in this paragraph can be found at ECF No. 1 at 6.

ECF No. 1 at 14, and about being sprayed with a chemical agent that same day, *id*. at 15. Both grievances were made on December 14, 2021, and they were forwarded to the Office of the Inspector for further review on December 15, 2021. *See* ECF No. 1 at 14-15. But, before a review could be reasonably conducted, Spears appealed to the Secretary of the Florida Department of Corrections on December 15, 2021.[5] For relief, Plaintiff seeks punitive damages in the amount of $500,000 and Defendants' termination of employment at the prison. *Id*. at 7.[6]

## II.   LEGAL STANDARDS

### A.   PLRA Exhaustion Requirement.

Under 42 U.S.C. § 1997e(a) of the PLRA, "[n]o action shall be brought with respect to prison conditions under . . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004); *see also*

---

[5] *See* December 15, 2021 appeal to the Secretary # 22-6-0037, ECF No. 16-1 at 3. In the appeal to the Secretary, Spears does not complain that he was sprayed with a chemical agent. Rather, he complains that Driggers threatened to spray him. *See id*.

[6] Driggers also requests that Defendants be fired from their positions at the prison. ECF No. 1 at 7. But, as Defendants correctly point out, this Court lacks the authority to fire state employees. *See, e.g., Adams v. So. Health Partners, Inc.*, No. 3:10-cv-85 (CDL), 2010 WL 5638578, at * 2 (M.D. Ga. Dec. 17, 2010) (*citing Newman v. Alabama*, 559 F.2d 283 (5th Cir. 1977)).

*Woodford v. Ngo*, 548 U.S. 81, 93-94, 126 S.Ct. 2378, 2387-88, 165 L.Ed.2d 368 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement and concluding that the PLRA demands "proper exhaustion").  Nevertheless, prisoners are not required to "specifically plead or demonstrate exhaustion in their complaints." *See Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007).  Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" *Id*.; *Abram v. Leu*, 759 F. App'x 856, 860 (11th Cir. 2019) (PLRA exhaustion is an affirmative defense) (per curiam) (*citing Jones*, 549 U.S. at 216, 127 S.Ct. at 910).

Importantly, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits."  *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008); *see also Jones*, 549 U.S. at 211, 127 S.Ct. at 918-919.  While "the PLRA exhaustion requirement is not jurisdictional[,]" *Woodford*, 548 U.S. at 101, 126 S.Ct. at 2392, "exhaustion is mandatory… and unexhausted claims cannot be brought in court "  *Pavao v. Sims*, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (*citing Jones*, 549 at 211, 127 S.Ct. at 918-919).  Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in the applicable

administrative rules and procedures of the institution. *Woodford*, 548 U.S. at 93, 126 S.Ct. at 2387.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out and doing so *properly* (so that the agency addresses the issue on the merits)."

*Id*. at 90, 126 S.Ct. at 2385-86 (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The requirement to exhaust "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002) (citation omitted).

Further, the PLRA's exhaustion requirement contains a "procedural default component": prisoners must comply with the applicable deadlines, or good-cause standards for failure to comply contained in the administrative grievance procedures. *Johnson v. Meadows*, 418 F.3d 1152, 1158-59 (11th Cir. 2005) "'[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating." *Id*. at 1158. "[T]o exhaust

remedies, a prisoner must file complaints and appeals in the place, and at the time, the prisoner's administrative rules require.'" *Id*. (quoting *Pozo,* 286 F.3d at 1025).

### B. Florida DOC's Inmate Grievance Process.

In Florida, the procedural rules an inmate must follow to properly exhaust administrative remedies are promulgated by the Florida Department of Corrections ("FLDOC") and contained in the Florida Administrative Code. *See* Fla. Admin. Code Chapter 33-103 ("Inmate Grievances"). To properly grieve an issue, an inmate must file a written informal grievance using Form DC6-236, (Rule 33-103.005). If the inmate is dissatisfied with the result of the informal grievance, he must next file a written formal grievance with the Warden's office using Form DC1-303, (Rule 33-103.006). Finally, if the inmate feels that the grievance has still not been satisfactorily resolved, he must submit a written appeal to the State Office of the Secretary ("Central Office") using Form DC1-303. (Rule 33-103.007). *See e.g. Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010).  (applying Rules 33-103.005, 33-103.006, and 33-103.007 under the PLRA's exhaustion requirements).

The rules also establish strict time frames for inmates to file grievances.  Pursuant to Rule 33-103.011 ("Time Frames for Inmate

Grievances"), informal grievances must be received "within 20 days of the when the incident or action being grieved occurred," and formal grievances (including direct formal grievances of a medical nature) must be received "no later than 15 calendar days" from either: (1) the date on which the informal grievance was responded to; or (2) the date on which the incident or action being grieved occurred if an informal grievance was not filed. (Rule 33-103.011(1)(a), and (b)). Direct grievances to the Central Office must also be received within 15 days from the date on which the incident or action being grieved occurred. (*See* Rule 33-103.011(1)(d)).

    **C.**    ***Turner*'s Two-Step Analysis.**

Deciding a motion to dismiss for failure to exhaust administrative remedies as required by the PLRA requires a two-step analysis as established in *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). The Court first "looks to the factual allegations in the defendant's motion to dismiss and those in plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* at 1082 (citation omitted). At the first step of the *Turner* analysis, the Court must accept Plaintiff's assertion as true and make the exhaustion determination on Plaintiff's view of the facts.

*Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1211-12 (11th Cir. 2015). "If the complaint is not subject to dismissal through the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082; *Whatley*, 802 F.3d at 1213 (defendants' contention that plaintiff's exhibits were fabricated created a factual dispute that required explicit findings under the second *Turner* step; such findings are subject to review on appeal for clear error) (citation omitted). The court "make[s] *specific findings* to resolve the disputed factual issues related to exhaustion." *Whatley,* 802 F.3d at 1211-12 (emphasis in original).

Because PLRA exhaustion is an affirmative defense, "the defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Turner*, 541 F.3d at 1082 (citation omitted); *Brown*, 312 F.3d at 111 ("Failure to exhaust administrative remedies [under the PLRA] is an affirmative defense that must be pled and proven by the defendant.") (citation omitted); *see also Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). If Defendant fails to carry his burden to prove that Plaintiff failed to exhaust his administrative remedies, dismissal is not warranted. *See McIlwain v. Burnside*, 830 F. App'x 606 (11th Cir. 2020)

(reversing a district court's dismissal of prisoner's complaint for failure to exhaust because the district court "did not give [the plaintiff] an opportunity to develop the record on this issue before deciding it on the papers."); *Abram*, 759 F. App'x at 861 (vacating district court's dismissal on exhaustion grounds "[b]ecause the district court failed to provide [Plaintiff] a meaningful opportunity to respond and be heard on the exhaustion issue[.]"); *see also*, *Mann v. Perez,* Case No. 1:17-cv-241-AW-GRJ, 2019 WL 8160987, at *3 (N.D. Fla. Dec. 27, 2019) (recommending that motion to dismiss be denied because Defendants failed to meet their burden under the second step of the *Turner* analysis), report and recommendation adopted in part, 2020 WL 1062995 (not addressing exhaustion); *Diaz v. Martin*, Case No. 20-cv-23889-BLOOM, 2021 WL 2333296, at *8 (S.D. Fla. Jun. 8, 2021) (recommending that motion to dismiss be denied where defendant "ha[d] not carried his burden to show that Plaintiff failed to exhaust his administrative remedies" with respect to deliberate indifference claim); *Williams v. Hughes*, Case No. 5:19-cv-89-TKW/MJF, 2021 WL 606248, at *5 (N.D. Fla. Jan. 25, 2021) (recommending that motion to dismiss be denied without prejudice in order to allow limited discovery on exhaustion, citing *McIlwain*, 830 F. App'x at 611).

### III.     DISCUSSION

In this case, Spears did not give the correctional institution time to address his grievances.  Rather, he raced through the process before heading to court.  Spears filed both grievances with the Assistant Warden on December 14, 2021. *See* ECF 16-1 at 1, 2. The next day, December 15, 2021, he filed an appeal with the Secretary. *Id*. at 3.  Yet, on December 15, 2021, the institution notified Spears that his grievances had been referred to the Inspector General for review.  *See id*. at 2.  Spears' rush to file grievance after grievance then appeal defeats the whole purpose of the administrative remedy process. The purpose of the administrative remedy scheme is to allow prison officials an opportunity to redress complaints before the courts are asked to weigh in. *McCarthy v. Madigan*, 503 U.S. 140, 145, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992), abrogated by the PLRA on other grounds ("The exhaustion doctrine… acknowledges the commonsense notion of dispute resolution that an agency ought to have an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court.").

Under *Turner*'s two-step analysis, the Court must look at the allegations in Defendants' motion to dismiss and those in Plaintiff's response to see if they conflict.  In this case, there is no conflict.  The copies of the

grievances filed at the institutional level, which were submitted by both parties, are identical. They establish that Spears grieved being denied mental health treatment and being sprayed with a chemical agent to the Assistant Warden on December 14, 2021. *See* ECF No. 1 at 14-15; compare ECF No. 16-1 at 1-2. And, while Spears did not supply the Court with a copy of the appeal he took to the Secretary, he does not dispute that the authenticity of the copy of the appeal filed by Defendants, ECF No. 16-1 at 3, or the fact that the appeal was dated December 15, 2021. *See* ECF No. 25.

In his response to Defendants' Motion to Dismiss, Spears admits that he failed to follow the proper exhaustion procedures even though he misconstrues what was his specific failure. *See id*. at 1. In view of these facts, the Court finds no conflict about the steps Spears took to grieve his complaints or the dates upon which he did so. In the absence of such a conflict, the Court does not need to defer to Spears' bare assertions that he exhausted his administrative remedies. That is especially true here, where Spears essentially admits that he did not comply with the grievance rules but asks the Court to overlook that fact. *See id.*

If the Court were to overlook Spears' failure to comply with the grievance rules—which it lacks power to do—the FLDOC would be deprived

of the opportunity to redress Spears' grievances, defeating the purpose of the administrative remedy scheme. Because Spears rushed to the courthouse without awaiting a remedy from his correctional institution, this Court cannot adjudicate his claims. Consequently, this case must be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, it is respectfully **RECOMMENDED** that Defendants' Motion to Dismiss, ECF No. 16, should be **GRANTED** for failure to exhaust administrative remedies and this case should be **DISMISSED without prejudice.**

**IN CHAMBERS** at Gainesville, Florida this 2nd day of August 2022.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636**.